UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDELL BROWN,

           Petitioner,

                                               CASE NO. 2:08-CV-11419

v.                              JUDGE STEPHEN J. MURPHY, III

                                               MAGISTRATE JUDGE PAUL J. KOMIVES

JERI-ANN SHERRY,

           Respondent.

_____/

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Lindell Brown is a state prisoner, currently confined at the Straits Correctional Facility in Kincheloe, Michigan.

    2.    On November 1, 2005, petitioner was convicted of possession with intent to deliver over 1000 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(I), pursuant to his guilty plea in the Wayne County Circuit Court.  In exchange for his plea, the prosecutor agreed to dismiss a marijuana charge, and to a sentence of 9½-20 years' imprisonment.  Petitioner also reserved his right to appeal the trial court's ruling on his motion to suppress.  On November 18, 2005, petitioner was sentenced to a term of 9½-20 years' imprisonment in accordance with the plea agreement.

    3.    Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claim:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, AS THE SEARCH AND SEIZURE IN THIS CASE WAS DONE IN DIRECT VIOLATION OF THE FOURTH AMENDMENT AND ESTABLISHED UNITED STATES SUPREME COURT CASE LAW.

    (1)    SEARCH OF INTERIOR OF VEHICLE.

    (2)    THE PEOPLE AND THE COURT FAILED TO RECOGNIZE THAT THERE ARE TWO ILLEGAL SEARCHES IN THIS CASE.

    (3)    PROLONGED DETENTION DURING THE SEARCH OF A VEHICLE AS OPPOSED TO MERELY RUNNING THE VIN ON COMPUTER

    (4)    ILLEGAL SEIZURE OF DEFENDANT.

    (5)    CONCLUSION.

The court of appeals granted petitioner's application for leave to appeal, and rejected the claim on the merits. *See People v. Brown*, No. 267117, 2007 WL 677209 (Mich. Ct. App. Mar. 6, 2007) (per curiam).

4.    Petitioner sought leave to appeal this issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Brown*, 479 Mich. 863, 735 N.W.2d 279 (2007).

5.    Petitioner, through counsel, filed the instant application for a writ of habeas corpus on April 8, 2008. As grounds for the writ of habeas corpus, he raises the search and seizure claim that he raised in the state courts.

6.    Respondent filed her answer on October 8, 2008. She contends that petitioner's claim is not cognizable on habeas review.

7.    Petitioner filed a reply to respondent's answer on November 24, 2008.

B.    *Factual Background Underlying Petitioner's Conviction*

2

Petitioner's conviction arises from a traffic stop and subsequent search of his vehicle which resulted in the discovery of a large quantity of cocaine, marijuana, and currency. The circumstances of the stop and search were testified to by the arresting officers at the preliminary examination.

Detroit Police Officer Paul Pesmark testified that on June 11, 2005, at approximately 11:00 p.m., he was on routine patrol in the area of Greenfield and Thatcher in the City of Detroit. He and his partner, Nathan MacRae, were in a marked patrol car. At approximately midnight he saw a gold Chevy Trailblazer change lanes without signaling and pull away from the patrol car in a construction zone. He and MacRae initiated their overhead lights and sirens, and the car pulled over. *See* Prelim. Exam. Tr., at 48-51. After the car stopped, he approached on the passenger's side. As he approached, he detected "the distinct smell of marijuana emanating from the vehicle." *Id.* at 51.[1] He let his partner, who walked up on the driver's side, proceed with the traffic investigation. He did not at that time tell MacRae that he had smelled marijuana. *See id*. at 52. Pesmark then looked into the car to see if the driver was sitting on anything or had anything on his person. During this time, petitioner was being argumentative with MacRae, telling MacRae that the car was a rental car and that MacRae should call the phone number on the rental car brochure to confirm that the vehicle was not stolen. *See id*. at 52-54. Pesmark went over to the driver's side of the vehicle and told petitioner that because he did not have any rental paperwork, he wished to look inside the door and check the Vehicle Identification Number (VIN). If everything checked out, Pesmark informed petitioner, he would be issued a citation for the traffic infraction and would be free to go. *See id*. at 54-55. Petitioner said, "Okay. Go ahead and check." He got out of the vehicle and MacRae patted him

---

[1]Pesmark testified that he had smelled marijuana before, and that he had been trained to identify marijuana by sight and smell. *See* Prelim. Exam. Tr., at 51.

3

down to make sure he was not armed.  Pesmark checked the VIN in the door, and then proceeded

to check the seatbelt, because it is common for a car that has been stripped and put back together to

have a new seatbelt with a new year that does not match the VIN.  As he was pulling the seatbelt out,

he saw a black and blue duffle bag in the backseat.  Sticking out of the duffel bag was what appeared

to be a white ream of paper with no labeling, and shrink-wrapped.  *See id*. at 55-56.  The packaging

was consistent with how a kilogram "brick" of cocaine is usually transported.  *See id*. at 57.

Pesmark reached into the vehicle and felt the item.  It was hard and felt similar to the bricks of

cocaine he had been shown in training.  Believing that the duffel bag contained drugs he looked

inside, finding a total of five bricks of cocaine.  He confiscated the cocaine and placed petitioner

under arrest.  *See id*. at 57-59.  He then contacted the Narcotics Division and his supervisor, and the

vehicle was impounded.  An inventory search uncovered $165,000 in cash.  *See id*. at 61-62.

   On cross-examination, Pesmark testified that he did not know if the marijuana he had

smelled was burnt or unburnt.  *See id*. at 67-69.  He could not recall if MacRae had described to him

smelling marijuana.  *See id*. at 69.  He again testified that neither he nor MacRae had contacted the

rental car company even though petitioner had repeatedly requested that they do so.  *See id*. at 69-71.

Pesmark conceded that there was a VIN on the dashboard that he could have seen through the

windshield without entering the car.  He also testified, however, that it is possible to change the VIN

by cutting out the framework.  *See id*. at 72-73.  He admitted that he had told petitioner that he was

looking inside the vehicle to examine the VIN, and did not tell him that he was going to search the

entire car.  *See id*. at 75-76.  He also admitted that after he saw the cocaine he did not ask petitioner

for further consent to search the vehicle or seek a warrant.  *See id*. at 78-79.  Pesmark admitted that

he had never before been involved in the seizure of cocaine.  *See id*. at 80-81.

Pesmark's partner, Nathan MacRae, also testified at the preliminary examination. His testimony regarding the circumstances leading up to the stop of petitioner's vehicle was consistent with Pesmark's testimony. *See id*. at 84-88. After the vehicle had pulled over, he got out of his car and approached the driver's side of petitioner's vehicle. He looked inside the vehicle to see if anyone else was inside, and asked the driver for his license, registration, and proof of insurance. *See id*. at 88-89. Petitioner informed him that the car was a rental car. Upon MacRae's request for documentation, petitioner produced a brochure which listed the terms and conditions of rental. It did not, however, have the vehicle's VIN or other information which would confirm that the car was properly rented. Petitioner also did not produce proof of insurance. *See id*. at 89-90. While he was still having a conversation with petitioner, Pesmark asked petitioner to exit the vehicle. Petitioner was not abusive at this time, but seemed nervous and was reluctant to get out of the car. MacRae asked him to comply with Pesmark's request to exit the vehicle. Petitioner argued for a while but eventually consented to exit the vehicle. *See id*. at 90-91. When petitioner got out of the car, MacRae patted him down for weapons. MacRae did not engage in the search of the vehicle or make any confiscations. *See id*. at 91-92.

On cross-examination, MacRae testified that he could not recall if the passenger side window was down when he approached the vehicle. He also denied that he smelled marijuana at the time he went to the vehicle. *See id*. at 93-94. He admitted that petitioner asked him to contact the rental company as set forth on the brochure but neither he nor Pesmark did so. *See id*. at 96-97. Following the testimony of the officers, the court bound petitioner over for trial.

Petitioner subsequently filed a combined motion to dismiss and for suppression of the evidence. The trial court held a hearing on the motion on October 20, 2005. The court did not take

any additional evidence at this hearing, *see* Mot. Tr., dated 10/20/05, at 8, but heard counsels' arguments.  Defense counsel argued that the initial stop was solely for a traffic violation, and that by Supreme Court caselaw they were not entitled to look inside the vehicle for the VIN when it could be observed from outside the vehicle.  *See id*. at 18-24.  The prosecutor responded that it was permissible for the officers to look inside to check the VINs on separate parts of the vehicle, and that the search ensued because Officer Pesmark saw the cocaine in plain view while checking the inside VIN.  The prosecutor also noted that the search could be justified on the basis of Officer Pesmark's testimony that he smelled marijuana.  *See id*. at 24-28.  Defense counsel replied that the police officers did not testify that the odor of marijuana was the basis for their search, only that they went into the car to look for the VIN.  *See id*. at 30.

The trial court denied petitioner's motion to suppress.  After thoroughly discussing the preliminary examination testimony of the officers, *see* Mot. Tr., dated 10/28/05, at 5-13, the court acknowledged petitioner's argument regarding the propriety of the officers entering the vehicle to look at the VIN.  *See id*. at 13-14.  The court concluded, however, that "[n]one of that's relevant to this Court.  Because what basically it comes down to is this officer testifying at [the] preliminary examination that he smelled the presence of marijuana.  And it's that simple."  *Id*. at 14.  The court noted that if the police have probable cause to search a vehicle, they may do so without a warrant, and that probable cause to search a vehicle may be premised on an officer's recognition of the smell of marijuana.  *See id*.  The court concluded that, based on the smell of marijuana, the officers had probable cause to search the vehicle, and therefore the court denied defendant's motion to suppress. *See id*. at 15-17.  Following the court's ruling, the parties reached a plea agreement and petitioner entered his guilty plea, reserving his right to appeal on the suppression issue.

On appeal, petitioner raised a number of challenges to the trial court's denial of his motion to suppress.  The Michigan Court of Appeals rejected petitioner's claims.  Acknowledging petitioner's argument–based on *New York v. Class*, 475 U.S. 106 (1986)–that the police could not enter the vehicle to search for the VIN, the court recognized that petitioner "raised a significant issue regarding whether the search of his car was lawful based upon the attempt to locate VINs[.]" *Brown*, 2007 WL 677209, at *2, slip op. at 2.  However, the court concluded that this argument was irrelevant because it "agree[d] with the trial court that the validity of this search must be sustained because the odor of marijuana was detected coming from the vehicle." *Id*.  The court reasoned that because the smell of marijuana by a person qualified to know the odor may establish probable cause to search a vehicle, and because Pesmark testified that he had been trained to identify the smell of marijuana, "[a] full search of the vehicle, to the extent consistent with hunting for marijuana, was proper as of that moment." *Id*.  The court of appeals also rejected petitioner's argument that a search based on the odor of marijuana was impermissible because the officers did not immediately search the vehicle after Pesmark smelled marijuana but instead told petitioner they were looking only for the VIN to determine whether the vehicle had been stolen.  The court explained that

> defendant cites no authority for the proposition that where a police officer has probable cause to conduct a search, that officer loses that prerogative upon misleading the suspect concerning the nature or extent of the suspect's detention. Nor does defendant cite authority for the proposition that where probable cause exists in fact, a search consistent with it becomes improper if the officer does not articulate the reason for the search, or otherwise indicate a full understanding of that prerogative.

*Id*. The court therefore upheld the search, and affirmed petitioner's conviction and sentence.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

7

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

9

D.      *Analysis*

Petitioner's sole claim in this habeas proceeding is that the search of his car violated his rights under the Fourth Amendment.  Because such a claim is not cognizable on habeas review, the Court should deny the petition.

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam).  Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts.  "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994).  The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).

There is no question that Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims.  *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  Petitioner argues, however that this

mechanism was frustrated, and thus he did not truly have an opportunity to litigate his Fourth Amendment claim, for a number of reasons. The Court should conclude that each of these reasons is insufficient to show that petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claim.

At the outset, I note that much of petitioner's argument for rejecting the application of *Stone* in this case is based on his assertions that the state court misconstrued the facts or misapplied the law. These assertions, even if true, are not themselves sufficient to overcome the *Stone* bar. Under *Stone* the correctness of the state courts' conclusions is simply irrelevant. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *see also*, *Willett*, 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994). As succinctly put by the Seventh Circuit, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003).

Turning to petitioner's specific arguments, the Court should conclude that petitioner did have a full and fair opportunity to litigate his Fourth Amendment claim. First, petitioner contends that he did not have a full and fair opportunity to litigate because Officer Pesmark did not claim that he was conducting a search based on the odor of marijuana when he looked into the car and that state did not argue this as a basis for upholding the search. However, Officer Pesmark was questioned

11

by both the prosecutor and defense counsel at the preliminary examination about smelling marijuana, as was Officer MacRae. Further, although inartfully argued, the prosecutor did argue to the trial court that the existence of the marijuana odor distinguished petitioner's case from the Supreme Court's decision in *Class*, and explicitly mentioned the Michigan Supreme Court's decision in *People v. Kazmierczak*, 461 Mich. 411, 605 N.W.2d 667 (2000) (holding that the smell of marijuana may establish probable cause to search a vehicle). *See* Mot. Tr., dated 10/20/05, at 27. Defense counsel responded to this argument, stating that this was not the basis of the officers' search but was merely an "after-the-fact bootstrap argument that's being through to the Court." *Id.* at 30. Further, even if the issue was not fully litigated in the trial court, the issue was fully litigated in the parties' briefs in the Michigan Court of Appeals. *Cf. Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (petitioner afforded full and fair opportunity to litigate Fourth Amendment claim where the state "provided a corrective mechanism for any error the trial court may have made in admitting the evidence by allowing [petitioner] to appeal his conviction."); *Griffin v. Rose*, 546 F. Supp. 932, 935 (E.D. Tenn. 1981), *aff'd*, 703 F.2d 561 (6th Cir. 1982) (petitioner not denied full and fair opportunity to litigate even though appellate court upheld search on an alternative basis which was not specifically addressed by petitioner).[2] Thus, the issue was properly joined and litigated in the state

[2]*Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982), upon which petitioner relies, does not compel a different conclusion. In *Riley*, the petitioner had filed a motion to suppress which was denied, and had been convicted. On appeal, he argued that the evidence should have been suppressed because the warrant had been issued on the basis of information obtained in a prior warrantless search of his home. The Ohio Court of Appeals denied the challenge on the alternative basis that the petitioner had not established his standing to challenge the search, and the Ohio Supreme Court denied the petitioner's application for review. The Sixth Circuit found that, because the standing issue had not been at issue before the Ohio Court of Appeals's decision and because he was afforded no further review of that decision, he did not have a full and fair opportunity to litigate the Fourth Amendment standing issue. *See id.* at 527. Here, on the contrary, even if the issue was not fairly litigated at the trial court, petitioner had ample opportunity to litigate the issue in the Michigan Court of Appeals, and in fact did so. Thus, petitioner's case is more akin to *Chavez*, cited above, than to *Riley*. *See Matthews v. Foltz*, No. 84-1786,

courts, and petitioner was not denied a full and fair opportunity to litigate the issue.[3]

Petitioner also contends that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because the trial court did not conduct an evidentiary hearing on his motion to suppress. However, the state court record shows that petitioner had the ability to fully present his factual contentions and legal arguments. Specifically, the preliminary examination was conducted in light of a motion to dismiss and suppress which petitioner had filed. *See* Prelim. Exam. Tr., at 5. Both parties extensively questioned the two arresting officers regarding the scope of the search, and more specifically petitioner's counsel cross-examined Officer Pesmark regarding his claim that he had smelled marijuana, and elicited from Officer MacRae that he had not smelled marijuana. *See id*. at 67-69, 94-95. Because these factual issues were fully explored at the preliminary examination, "[t]he mere fact that the trial court ruled on petitioner's motion to suppress

---

1986 WL 16529, at *2 (6th Cir. Feb. 19, 1986) (distinguishing *Riley* on the basis that the petitioner in this case was able to litigate his Fourth Amendment claim in the court of appeals).

[3]To the extent petitioner contends that he did not have a full and fair opportunity to litigate because the officers did not justify their search on the basis of the marijuana odor at the time of the search, this argument is without merit because it has nothing to do with the fullness of petitioner's opportunity to litigate the Fourth Amendment issue. Rather, it goes to the merit of the state courts' rulings, and thus is not a basis for overcoming the *Stone* bar. In any event, petitioner's argument is without merit. It is well established that the smell of marijuana from an automobile provides probable cause for a search of the passenger compartment of the automobile. *See United States v. Crumb*, 287 Fed. Appx. 511, 513-14 (6th Cir. 2008); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004). So long as the facts known to Officer Pesmark–*i.e.*, his smell of marijuana–provided probable cause when objectively viewed, his failure to recognize this basis of probable cause does not render the search invalid. As the Supreme Court has indicated, "[n]ot only have we never held, outside the context of inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Whren v. United States*, 517 U.S. 806, 812 (1996). Thus, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action.'" *Id*. at 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)); *see also*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause.").

13

evidence without conducting a new evidentiary hearing does not constitute a denial of a full and fair opportunity to litigate his Fourth Amendment claims in the state courts." *Williams v. Davis*, No. 2:07-CV-11050, 2007 WL 184088, at *4 (E.D. Mich. June 26, 2007) (Duggan, J.); *accord Smith v. Sherry*, No. 04-CV-73038, 2005 WL 2649244, at *4 (E.D. Mich. Oct. 14, 2005) (Rosen, J.); *see also*, *Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979).

Indeed, the state court record belies petitioner's claim that the record regarding the search was not fully developed. Petitioner's motion to suppress filed after the preliminary examination was based on the record developed at the preliminary examination.[4] When the trial judge, in response to a question from petitioner's counsel, indicated that she did not intend to take further testimony regarding the matter, counsel lodged no objection to the trial court proceeding on the basis of the preliminary examination transcript nor asserted any need for the court to take additional evidence. *See* Mot. Tr., dated 10/20/05, at 8. On appeal, petitioner did not move for an evidentiary hearing, nor did he challenge in any way the adequacy of the trial court's procedures in this application for leave to appeal, brief on appeal, or reply brief in the Michigan Court of Appeals. Likewise, his application for leave to appeal in the Michigan Supreme Court does not challenge the adequacy of the trial court's procedures.

---

[4]As petitioner notes, his motion to suppress did request an evidentiary hearing as alternative relief. However, apart from this simple request, petitioner did not in the motion assert any particular need for a further evidentiary hearing or suggest any additional evidence which would be presented. Nor did petitioner object to the court proceeding without taking additional evidence at the hearing on the motion. More importantly, as explained below in the subsequent appellate proceedings petitioner did not so much as hint that the trial court's failure to conduct a further hearing required relief, nor did he seek to further develop the record at that time. *See* MICH. CT. R. 7.211(C)(1). This opportunity for corrective action on direct review renders the state proceedings "full and fair" under *Stone*. *See Pulver v. Cunningham*, 419 F. Supp. 1221, 1224 (S.D.N.Y. 1976), *aff'd*, 526 F.2d 198 (2d Cir. 1977); *see also*, *Marshall v. White*, No. 04-CV-71645, 2006 WL 1791383, at *5 (E.D. Mich. June 27, 2006) ("[T]he opportunity to litigate encompasses more than an evidentiary hearing in the trial court. It also included corrective action available through the appellate process on direct review of the conviction.").

Even in this Court, petitioner has failed to identify any additional relevant evidence which could have been explored in a further hearing. The two officers involved in the search testified extensively at the preliminary examination regarding the circumstances of the search. The only other witness to the search was petitioner himself, and he does not suggest that he would have testified at a further hearing. Petitioner has filed a motion for evidentiary hearing and discovery in this Court, but the factual matters which petitioner seeks to develop are simply irrelevant to the validity of the search. Specifically, petitioner seeks further factual development of Officer Pesmark's relationship with fellow officer Vincent Crockett, who after the search and petitioner's conviction was convicted of stealing the drugs that had been seized from petitioner. Other than an implicit guilt-by-association argument, however, petitioner has failed to explain how this information is in any way relevant. Officer Crockett was not involved in the search, however, and his stealing the drugs is simply irrelevant to whether Officer Pesmark had probable cause at the time the search was conducted. Petitioner also seeks discovery regarding other cases where a seizure of drugs was suppressed, cases in which Officer Pesmark seized drugs prior to the arrest of petitioner, and all Internal Affairs reports related to Officer Pesmark. This information, too, is irrelevant. As noted above, neither the subjective motivation of Officer Pesmark nor his understanding of the basis for probable cause are relevant to the validity of the search; the only question is whether the facts known to Officer Pesmark, viewed objectively, provided probable cause for the search. *See supra* note 3. Officer Pesmark's handling of other searches or the fact that he may have conducted prior searches which were found to violate the Fourth Amendment have no bearing on this objective inquiry. Thus, the state court record shows that petitioner had ample opportunity to present his factual allegations and did not in the state court proceedings challenge the adequacy of the trial

court's procedures, and petitioner has failed to allege any additional, relevant evidence that he could have or would have presented had the trial court conducted a further evidentiary hearing. In these circumstances, petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.

Finally, petitioner contends that *Stone* does not bar review of his claim because the Michigan Court of Appeals engaged in an "egregious error in the application of [F]ourth [A]mendment principles," *Riley*, 674 F.2d at 526, because the court of appeals "ignor[ed] the holding in *New York v. Class*." Pet'r's Reply, at 6. The court of appeals's opinion, however, does not show that the court ignored *Class*. On the contrary, the court recognized petitioner's reliance on *Class* and correctly identified the holding of that case, noting that pursuant to *Class* petitioner had "raised a significant issue regarding whether the search of his car was lawful based upon the attempt to locate VINs." *Brown*, 2007 WL 677209, at *2, slip op. at 2. The court simply found that this issue did not entitle petitioner to relief because the search was independently justified on an alternative basis, namely, Officer Pesmark's detection of the odor of marijuana. And as noted above, *see supra* note 3, regardless of whether or not ultimately correct, this determination was not an "egregious error" in the application of Fourth Amendment principles.

D.    *Conclusion*

The state court record establishes that petitioner has a full and fair opportunity to raise his Fourth Amendment claim in the state courts, and that he did so both at the trial level and on direct appeal. Petitioner's Fourth Amendment claim is therefore not cognizable on habeas review under the *Stone* rule. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: July 21, 2009

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on July 21, 2009.

s/Eddrey Butts
Case Manager

18